

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

---

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

December 18, 2023

**Via ECF**
The Honorable District Judge Vincent L. Briccetti
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Re: Moises **Miranda v. YBJ Incorporated, et al.**
       **23-CV-1841 (VB)**

Dear Judge Briccetti:

Our office represents Moises Gilberto Jimenez Miranda ("Plaintiff") in this matter. We write this letter jointly with counsel for Defendant YBJ Incorporated, Yosef Hechter Robert Berk and Miguel Ovalles (collectively, "the Defendants"), setting forth the reasons why Plaintiff and Defendants (collectively the "Parties") believe the proposed settlement in this matter is fair and reasonable. The terms of the parties' settlement agreement ("Settlement Agreement"), attached hereto as **Exhibit 1**, were reached following months of continued negotiations between the parties.

The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

I.   **The Monetary Terms of the Settlement Agreement are Fair and Reasonable**

   a. **The Settlement Amount**

The parties agreed to resolve all claims asserted in this action, including Plaintiff's counsel's attorneys' fees, which are addressed below, for the global amount of $15,000.00.

### b. Plaintiff's Position

Plaintiff commenced this lawsuit alleging that he was not paid proper overtime rates of pay in violation of the Fair Labor Standards Act (FLSA) and New York Labor Laws (NYLL).

Plaintiff alleged that Defendants employed him as a stocker and packer at their warehouse located at 545 Franklin Avenue, Mount Vernon, New York 10550.

Plaintiff alleged that he was employed by Defendants for approximately four years and three months within the relevant statutory period. However, throughout the litigation, there were sharp disagreements as to Plaintiff's claims, in particular with regard to the number of hours he worked, with Defendants asserting that Plaintiff worked far fewer hours than Plaintiff alleged. Specifically, Plaintiff alleged that he worked approximately five days per week and approximately fifty-one (51) hours per week whereas Defendant contended that Plaintiff worked no more than forty-three hours per week on average and was fully compensated for the overtime hours worked.

Plaintiff, however, alleged that he was paid the same regular hourly rate of pay for his work in excess of 40 hours per week. Plaintiff alleged that he was paid hourly rates ranging from $11.00 to $15.00 per hour. Thus, Plaintiff claimed he was entitled to the "half-time" rate of overtime pay for approximately eleven (11) hours of overtime per week. Based on the above, Plaintiff alleged he was owed approximately $23,000.00 in unpaid wages.

In addition, during extensive discussions with Plaintiff's counsel, Plaintiff's counsel indicated that he was inclined to amend the Complaint to allege an additional claim of an unpaid spread of hours claim under NYLL. Defendant's analysis of the claim identified possible exposure of approximately $4,697.00. To that end, during the parties' exchange of documentation and information pursuant to the mediation protocols, Defendants produced records that showed fewer hours worked than alleged by Plaintiff as well as weeks where Plaintiff was paid proper overtime rates. Plaintiff disputed the number of hours worked according to Defendants' records and maintained that there were weeks where was paid straight time for all hours worked, even when he worked in excess of 40 hours per week.

As such, the parties had factual disputes over the number of hours worked by Plaintiff and the amounts of pay received by Plaintiff, including an entitlement to a purported spread of hours. Although Plaintiff was confident that he could prevail at trial, his preference was for a guaranteed outcome that would allow him to recover a reasonable portion of his alleged unpaid wages – a figure highly contested by Defendants – rather than face the risks, time and expenses associated with continued litigation and trial.

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Miegel v. Flowers of the World, NYC, Inc.*, 2012 U.S. Dist. LEXIS 2359, *2-3 (SDNY 2012). A court may approve an FLSA settlement when it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brough about by an employer's overreaching'." *Le v. Sita Information Networking Computing USA, Inc.*, 2008 U.S. Dist. LEXIS 46174, *2 (EDNY 2008) (quoting *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). "If the proposed settlement reflects a reasonable compromise

over contested issues, the settlement should be approved." *Kopera v. Home Depot USA, Inc.*, 2011 U.S. Dist. LEXIS 71816, *2 (SDNY 2011); *Ortiz v. My Belly's Playlists LLC*, 2018 U.S. Dist. LEXIS 66997, *5 (SDNY 2018). As outlined above, the proposed settlement here reflects a reasonable compromise of the contested issues. Thus, the parties request the Court's approval of same.

### c. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $15,000.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses and records maintained by Defendants in this matter. The parties had genuine bona fide disputes regarding the hours worked by Plaintiff and rates of pay received by Plaintiff, but both sides negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount.

### II.   **The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable**

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, , 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release language in Paragraph 1 of the Settlement Agreement is appropriately tailored to claims under the FLSA, NYLL and their associated regulations. The Release does not raise any concerns regarding unequal bargaining power between Plaintiffs and Defendants, and the Release is not overbroad such that there is a concern that Plaintiffs are releasing any and all possible claims against Defendants, including claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiffs from openly discussing their experiences litigating this matter as it pertains to his wage-and-hour claims as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

### III.   Distribution to Plaintiff and Requested Attorneys' Fees and Expenses

#### a. Distribution to Plaintiff

The parties agreed to a global settlement of $15,000.00 to resolve all claims asserted against the Defendants in this action. If the Agreement is approved by the Court, Plaintiff will recover $9,368.67 after the requested attorneys' fees and expenses.

#### b. Requested Attorneys' Fees and Expenses

Plaintiff's counsel respectfully requests $947.00 for identifiable expenses, which include:

- the Southern District of New York filing fee in this matter: $402.00
- the costs of service and attempted service of the Summons and Complaint on all Defendants: $531.00
- certified mailing of documents: $16.00

Additionally, Plaintiff's counsel respectfully requests one-third of the settlement less the expenses ($14,053.00), or $4,864.33 in attorneys' fees, as agreed upon in Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $5,631.33.

As such, the settlement funds as broken down into its component parts is as follows:

**Settlement Amount:** $15,000.00
**Attorneys' Expenses:** $947.00
**Net Settlement Amount:** $14,053.00 ($15,000.00 - $947.00)
**Requested Attorneys' Fees:** $4,864.33 ($14,053.00 / 3)
**Total payable to Attorneys:** $5,631.33 ($4,864.33 + $947.00)
**Total payable to Plaintiff:** $9,368.67 ($15,000.00 - $5,631.33)

Plaintiff's attorneys and their client have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.*, 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

      This request for attorneys' fees is supported by the work performed by Plaintiff's counsel throughout the litigation and the recovery secured through their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff.

### IV.   Closing

      In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of back-and-forth negotiations between experienced counsel and complies with the applicable case law under *Cheeks*. As such, we respectfully request that the Court approve the Settlement Agreement and dismiss the action. We thank the Court for its consideration and remain available to provide any additional information.

      Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.